UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRANDI WETHERALD, Individually and as Parent and Next Friend of C.W., A Minor, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 1:19-cv-00003-JPH-DML<br>) |
| CARMEL CLAY SCHOOL CORPORATION and THE CARMEL CLAY BOARD OF SCHOOL TRUSTEES, | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**ANSWER TO COMPLAINT FOR DECLARATORY JUDGMENT
AND ATTORNEY FEES AND COUNTERCLAIM PETITION FOR REVIEW**

Come now Defendants Carmel Clay Schools ("the District") and The Carmel Clay Board of School Trustees ("the Board"), by counsel, and state as follows for their Answer to Plaintiff's Complaint for Declaratory Judgment and Attorney Fees.

**I.**

**PARTIES**

1. Defendant Carmel Clay School Corporation ("the District") is a school corporation in Carmel, Indiana. The District's principal office is located in Hamilton County, Indiana.

**ANSWER:** Defendants admit that Carmel Clay Schools is a school corporation in Carmel, Indiana, and that its principal office is located in Hamilton County, Indiana. Defendants deny any remaining allegations in Paragraph 1 of the Complaint.

1

2. Defendant The Carmel Clay Board of School Trustees ("the Board") is the governing body of the District.

**ANSWER:** Admitted.

3. Plaintiff is a resident of Hamilton County, Indiana. She is the natural parent of C.W., a minor and brings this action in her individual capacity and as parent and next friend of C.W., a minor.

**ANSWER:** Defendants admit that Plaintiff is a resident of Hamilton County, Indiana, and that she purports to bring this action in her individual capacity and as parent and next friend of C.W., a minor. Defendants deny any remaining allegation in Paragraph 3 of the Complaint.

4. C.W. is a child with a disability as defined in 20 U.S.C. § 140(3)(A). Specifically, C.W. has autism spectrum disorder, an anxiety disorder, a mood dysregulation disorder, ADHD, Celiac disease, a rare chromosomal disorder and mitochondrial disorder that cause additional challenges in learning and behavior. At all relevant times he was and is eligible to receive special education and related services from the District.

**ANSWER:** Defendants admits that C.W. is a child with a disability as defined in 20 U.S.C. section 140(3)(A) and that he has autism spectrum disorder, an anxiety disorder, a mood dysregulation disorder, ADHD, Celiac disease, a rare chromosomal disorder and mitochondrial disorder. The phrase "at all relevant times" is vague and Defendants therefore deny any remaining allegation in Paragraph 4 of the Complaint.

## II.

## JURISDICTION

5. This action is brought pursuant to 20 U.S.C. § 1415(i)(3)(B) of the Individuals with Disabilities Education Act ("IDEA"), 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 to establish that Plaintiff is the prevailing party in an underlying state administrative proceeding and as such is entitled to an award of reasonable attorneys' fees and costs incurred in connection with those administrative proceedings. Specifically, Plaintiff seeks (a) a declaratory judgment declaring her a parent of a child with a disability who is a "prevailing party" under IDEA, and (b) an award of reasonable attorney fees and costs incurred in successfully prosecuting a special education due process case against the District, as well as attorney fees and costs incurred prosecuting this action, plus any damages to which she may be entitled, including recovery of costs and expenses. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under 20 U.S.C. § 1415(i)(3). To the extent Plaintiff has pendent claims arising under state law, 511 IAC 7-45-11 permits a prevailing party to bring an action for attorney fees in state or federal court. Therefore, this Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**ANSWER:** Defendants admit that Plaintiff's Complaint is an action for attorney fees under IDEA and that subject-matter jurisdiction is proper. Defendants deny that Plaintiff is entitled to attorney fees or any other relief sought in the Complaint and otherwise deny any remaining allegation in Paragraph 5 of the Complaint.

## III.

## VENUE

1. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b).

**ANSWER:** Admitted.

## IV.

## THE UNDERLYING ADMINISTRATIVE PROCEEDINGS

2. Pursuant to 511 IAC 7-45-3 and IDEA, on or about June 1, 2018, Plaintiff filed a Request for Due Process Hearing ("Due Process") with the Indiana Department of Education ("IDOE"). A redacted copy of the Due Process is attached hereto and incorporated by reference herein as Exhibit A.

**ANSWER:** Defendants admit that Plaintiff filed a due process hearing with the IDOE on or about June 4, 2018. Defendants further state that Exhibit A speaks for itself. Defendants deny any remaining allegation in Paragraph 2 of the Complaint.


3. In her Due Process, Plaintiff alleged numerous deficiencies in the Individualized Education Programs (IEPs) developed by the District for C.W. She alleged that the District committed various procedural and substantive violations of IDEA and, as a result, denied C.W. a free appropriate public education (FAPE).

**ANSWER:** Defendants state that any allegations Plaintiff made during the due process proceeding are contained in the administrative record and speak for themselves. Defendants deny any remaining allegation in Paragraph 3 of the Complaint.

4. Plaintiff proposed several remedies in her Due Process, including having the District pay for an Independent Educational Evaluation (IEE) of C.W., development of a new IEP for C.W., a private placement, training of District employees and provision of compensatory educational services.

**ANSWER:** Defendants state that any remedies Plaintiff proposed during the due process proceeding are contained in the administrative record and speak for themselves. Defendants deny any remaining allegation in Paragraph 4 of the Complaint.

5. IDOE assigned the Due Process Hearing Number HR-095-2018 and appointed an Independent Hearing Officer (IHO) to preside over the Due Process.

**ANSWER:** Admitted.

6. In a good faith effort to resolve the Due Process without a hearing, counsel for Plaintiff discussed settlement with defense counsel on numerous occasions over the subsequent months. On or about August 9, 2018, defense counsel acknowledged Plaintiff's "willingness to negotiate towards a resolution of this matter."

**ANSWER:** Defendants admit that the parties engaged in settlement discussions. Defendants admit that the introductory sentence of a settlement offer sent on August 9, 2018 stated: "We appreciate your willingness to negotiate towards a resolution of this matter." Defendants deny any remaining allegation in Paragraph 6 of the Complaint. Defendants deny any remaining allegation in Paragraph 6 of the Complaint.

7. Among other attempts to compromise and settle their dispute, Plaintiff's attorneys sent counsel for the District written settlement proposals (including proposals sent on August 24, 2018; September 4, 2018; September 7, 2018; October 22, 2018; October 29, 2018); however, the District rejected (either expressly or by its refusal to accept) all of the offers of compromise made by Plaintiff.

**ANSWER:** Denied.

8. By order dated October 12, 2018, the IHO framed the issues for the Due Process hearing. A true and accurate copy of her *Order Issues for Hearing* is attached hereto as Exhibit B.

**ANSWER:** Defendants state that Exhibit B speaks for itself. Defendants deny any remaining allegation in Paragraph 8 of the Complaint.

9. A Due Process hearing was convened October 29, 2018 and was held over a period of approximately five (5) days, concluding on November 2, 2018.

**ANSWER:** Admitted.

10. Witnesses were sworn. Plaintiff and the District presented evidence and argument. Both were allowed to submit post-hearing briefs and proposed findings of fact, conclusions of law and orders.

**ANSWER:** Admitted.

11. Following the hearing, the IHO took the matter under advisement. On December 7, 2018, the IHO issued her Due Process hearing decision ("Order"). A true and accurate copy of the Order is attached hereto and incorporated herein by reference as Exhibit C.

**ANSWER:** Defendants admit that the IHO took the matter under advisement and that the IHO issued a decision dated December 7, 2018. Defendants further state that Exhibit C speaks for itself. Defendants deny any remaining allegation in Paragraph 11 of the Complaint.

12. Based on her findings of fact, the IHO concluded that: the IEPs developed by the District were not reasonably calculated to provide C.W. with meaningful educational benefit and failed to provide him with a FAPE; the IEPs developed by the District did not provide C.W. with an education in his least restrictive environment (LRE); the District failed to consider placement options for C.W. other than a residential program; the District did not provide an appropriate transition plan for C.W. and did not implement his IEP as written; a residential placement as proposed by the District is not an appropriate transition plan for C.W.; and the District failed to provide C.W. with special education and related services when he was removed from his placement for disciplinary reasons.

**ANSWER:** The IHO's decision speaks for itself. Defendants deny any remaining allegation in Paragraph 12 of the Complaint.

13. As a result of these violations, the IHO ordered the District to: develop a new IEP for C.W. which includes academic goals; conduct a functional behavior assessment (FBA) and develop a behavior intervention plan (BIP) for C.W.; conduct assistive technology and occupational therapy evaluations of C.W.; pay for an IEE by a provider chosen by Plaintiff;

provide C.W. with a private placement in a day program with an appropriate curriculum; provide C.W. with transportation as a related service; provide C.W. with six months of compensatory educational services; provide Plaintiff with 10 hours of parent training; and provide District employees with 10 hours of training on Indiana special education law.

**ANSWER:** The IHO's decision speaks for itself. Defendants deny any remaining allegation in Paragraph 13 of the Complaint.

14. A comparison of the relief requested in Plaintiff's Due Process (Ex. A), the IHO's order framing the issues for hearing (Ex. B) and the IHO's Order (Ex. C) reveals that the IHO ruled in Plaintiff's favor and ordered the District to provide Plaintiff with all (or substantially all) of the relief requested.

**ANSWER:** Denied.

## V.

## ATTORNEY FEES

15. Plaintiff retained attorney Catherine Michael to represent her in the Due Process. Ms. Michael practices primarily in the area of education law. An affidavit summarizing her experience and hourly rate is attached hereto as Exhibit D. A true and accurate copy of her invoice is attached as Exhibit D-1.

**ANSWER:** Defendants admit that Plaintiff retained Ms. Michael and that Ms. Michael represented Plaintiff at the due process hearing. Defendants lack knowledge regarding the remaining allegations in Paragraph 15 of the Complaint and therefore deny the same.

16. Ms. Michael served as lead counsel for Plaintiff in the Due Process. Because of the complexity of the issues presented, she enlisted her partner, Sonja Kerr of her office and another education attorney, Thomas Blessing, to serve as co-counsel. His affidavit is attached hereto as Exhibit E. A true and accurate copy of his invoice is attached as Exhibit E-1. Ms. Kerr's affidavit is attached hereto as Exhibit F.

**ANSWER:** Defendants admit that Ms. Michael and Mr. Blessing represented Plaintiff at the due process hearing. Defendants lack knowledge regarding the remaining allegations in Paragraph 15 of the Complaint and therefore deny the same.

17. As of the date this action is filed, Plaintiff has incurred attorney fees of approximately $130,000 prosecuting the Due Process and this action. (See Exhibits D-1 and E-1) The amount of Plaintiff's attorney fees continues to increase and she reserves the right to seek recovery of reasonable fees incurred post-filing.

**ANSWER:** Defendants lack information regarding the attorney fees Plaintiff allegedly incurred and therefore deny the same. Defendants deny any remaining allegation in Paragraph 17 of the Complaint.

18. Plaintiff is the parent of a child with a disability. Under the Order, Plaintiff is a "prevailing party" in the Due Process for purposes of 20 U.S.C. § 1415(i)(3)(B) because the Order alters the legal relationship between Plaintiff and Defendants and Plaintiff succeeded on the merits of one or more of the issues in the Due Process and obtained most of the relief which she sought in her Due Process.

**ANSWER:** Defendants admit that Plaintiff is the parent of child with a disability, but deny that Plaintiff is a prevailing party under 20 U.S.C. § 1415(i)(3)(B). Defendants deny any remaining allegation in Paragraph 18 of the Complaint.

19. As such, Plaintiff is entitled to recover her reasonable attorney fees under 20 U.S.C. § 1415(i).

**ANSWER:** Denied.

## RELIEF SOUGHT

Plaintiff respectfully requests the following relief:

1. Judgment in her favor and against Defendants, jointly and severally;

2. A declaration that Plaintiff was the prevailing party as the parent of a child with a disability in the Due Process;

3. An award of reasonable attorney fees incurred in (a) prosecuting the Due Process, and (b) prosecuting this action;

4. Costs of this action;

5. Pre- and post-judgment interest; and

6. All other relief reasonable in the premises.

**ANSWER:** Defendants deny that Plaintiff is entitled to any relief.

## Affirmative Defenses

Defendants state the following affirmative defenses:

1. To the extent Plaintiff is entitled to recover her attorney fees, such fees are not reasonable for various reasons, including the hourly rate, double billing, or are otherwise unreasonable in light of the relief obtained and/or offers the District made.

2. Defendants reserve the right to amend this Answer and to assert additional defenses that may arise in the course of the investigation and discovery and further incorporates all defenses available under Fed. R. Civ. P. 8(c) as if fully set forth herein.

## COUNTERCLAIM PETITION FOR REVIEW

Comes now the Plaintiff, Carmel Clay Schools (the "School"), by counsel, and submits its Counterclaim Petition for Review ("Counterclaim").

### Jurisdiction and Venue

1. The School brings this Counterclaim under the Individuals with Disabilities in Education Act (hereinafter "IDEA"), 20 U.S.C. §§ 1400 *et seq.*; IDEA's implementing regulations, 34 C.F.R. Part 300 *et. seq.*; and Article 7 of the Indiana Administrative Code ("Article 7"), 511 I.A.C. §§ 7-32 *et seq.*

2. The Court has subject-matter jurisdiction under 20 U.S.C. section 1415 and 28 U.S.C. sections 1331 and 1367 because the Counterclaim arises under federal law.

3. The School seeks judicial review of an Article 7 administrative due process hearing conducted on October 29 to November 2, 2018. An independent hearing officer ("IHO") appointed under Article 7 presided over the administrative due process hearing and issued a decision dated December 7, 2018. The School received the IHO's decision on December 10, 2018.

4. Judicial review is appropriate under 20 U.S.C. section 1415(i)(2)(A) and 511 I.A.C. section 7-45-9(a), which states that "[a]ny party disagreeing with the decision of the independent hearing officer may file a petition for judicial review with a civil court with jurisdiction. Under IC 4-21.5-5-5, a petition for review by a state or federal civil court must be filed within thirty (30) calendar days after the date the independent hearing officer's written decision is received by the party." The rule goes on to state that "[t]he Court shall (1) receive the record of administrative proceedings; (2) hear additional evidence at the request of a party; and (3) grant the relief it determines to be appropriate, basing its decision on a preponderance of the evidence." 511 I.A.C. § 7-45-9(a).

5. Venue is appropriate because the School is located within the Indianapolis Division of the Court, and all relevant events took place within the geographic boundary of the Southern District of Indiana.

6. This Counterclaim is a compulsory counterclaim within the meaning of Federal Rule of Civil Procedure 13(a) because it arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim and does not require adding another party over whom the Court cannot acquire jurisdiction.

**Parties**

7. The School is a school corporation as defined by Indiana Code section 20-18-2-16 and its principal office is 5201 East Main Street, Carmel, Indiana.

8. The School is a Local Education Agency ("LEA") which receives federal funds under IDEA, and is obligated to fulfill the requirements of the IDEA and Article 7. Under these statutes, the School must provide a free and appropriate public education ("FAPE") to its students who are eligible for special education and related services under IDEA and Article 7.

The School must provide FAPE in an eligible student's least restrictive environment ("LRE") that is reasonably calculated to provide educational benefit.

9. At all times relevant to this Counterclaim, Defendants C.W., a minor child, by his next friend and parent, Brandi Wetherald, reside in Hamilton County, Indiana.

**Factual Allegations**

10. C.W. is a seventeen-year-old student living within the School's boundaries. C.W. has medical diagnoses of autism, depression, anxiety, ADHD, mood dysregulation disorder, sensory processing disorder, Celiac disease, a chromosomal anomaly, and five concussions. The School has identified C.W. as qualifying for IDEA special education services with a primary disability of emotional disability and a secondary disability of autism. C.W. has a long history of physical aggression, verbal aggression, self-harm, and run-ins with law enforcement.

11. On June 4, 2018, C.W.'s mother initiated an Article 7 due process administrative hearing request based on her perception that the School was planning to propose a residential educational placement for C.W. In the weeks and months that followed, C.W.'s mother unilaterally (and unbeknownst to the School) stopped sending C.W. to receive educational services from the School and instead placed C.W. at a non-educational facility known as "Changing Lives Behavior Analysis Services," which provides Applied Behavior Analysis ("ABA") therapy services in C.W.'s home and community settings."

12. A challenge in this context requires the petitioner to establish that (1) the School's offering was not a FAPE; and (2) the parent's unilateral placement is appropriate. *See Todd v. Duneland School Corp.*, 299 F.3d 899, 905 (7th Cir. 2002).

13. Moreover, an overriding principle implicit in IDEA is that the petitioner must participate in the interactive process and share any concerns during a case conference meeting. *See Hjortness v Neenah Joint School Dist.*, 507 F.3d 1060, 1066 (7th Cir. 2007).

I. *Overview of C.W.'s placements.*

14. Since enrolling with the School in August 2015, when he was in eighth grade, C.W. has had nine separate unsuccessful placements:

15. During eighth grade, C.W.'s case conference committee ("CCC") placed C.W. in the general education classroom at Carmel Clay Middle School with "push-in" special education supports.

16. At the start of ninth grade, C.W.'s mother enrolled C.W. in "Hope Academy" or "Hope Source," which is a charter school that included educational services and ABA therapy. The charter school dismissed C.W. due to physical aggression within days, and C.W.'s mother re-enrolled him with the School.

17. Upon re-enrollment with the School in August 2016, C.W.'s CCC placed him in a self-contained classroom for students with emotional disabilities at Carmel High School. C.W. displayed physically aggressive behavior that required intervention from law enforcement and resulted in a suspension pending expulsion.

18. In October 2016, C.W.'s mother filed an Article 7 due process administrative hearing request. As part of the resolution of that administrative hearing request, C.W.'s CCC revised C.W.'s individualized education program ("IEP") to place him in the School's intense behavior support day treatment program, which included one-on-one assistance from the School's dedicated Autism Consultant, who is a board-certified behavior analyst. C.W. remained

in the intense behavior support day treatment program from November 2016 to March 2017 (C.W.'s ninth grade year).

19. In the Spring of 2017, C.W.'s mother's requested that his CCC consider placing C.W. at "Access Behavior Analysis" in Indianapolis, which provides ABA therapy. C.W.'s CCC revised his IEP to include one-on-one ABA therapy for forty hours per week at Access Behavior Analysis, along with four additional hours per week of services from the School, and 24/7 access to the online curriculum portal. These services continued through the Summer of 2017, but C.W.'s behaviors deteriorated.

20. In October 2017, during its annual meeting to revise C.W.'s IEP, C.W.'s CCC revised his annual goals, reviewed transition planning, and C.W.'s mother signed the IEP. Unbeknownst to the School, around this time C.W.'s mother had become dissatisfied with Access Behavior Analysis and had identified "Independence Academy" as a possible successor. Independence Academy is a private school in Indianapolis that serves approximately thirty students, most of whom have autism and possibly other medical conditions.

21. In November 2017, C.W.'s mother filed a second Article 7 due process administrative hearing request and requested that C.W. be placed at Independence Academy. As part of the resolution of that administrative hearing request, C.W.'s CCC revised C.W.'s IEP to place him at Independence Academy. Like previous placements, the School provided C.W. with a one-on-one aide, as well as the School's Autism Consultant, to train Independence Academy staff on C.W.'s IEP and provide services to C.W. directly. C.W.'s mother signed the January 9, 2018, IEP. C.W. started attending classes at Independence Academy in January 2018.

22. C.W.'s behavior at Independence Academy was similar to other placements; he enjoyed a short "honeymoon period" before his behavior became a significant problem. By

March 2018, C.W.'s behavior deteriorated to the point that he was punching and kicking walls, flipping over furniture, throwing objects at staff and students, touching students and staff inappropriately, and hitting staff. Around this time, the School attempted to convene C.W.'s CCC, but C.W.'s mother refused. A CCC was eventually scheduled for May 1, 2018. On April 25, 2018, C.W. broke a table, threw objects at staff, and pushed and hit his aide in the face (in C.W.'s mother's presence), which resulted in Independence Academy dismissing C.W. for behavioral misconduct.

*II.     Events since C.W.'s dismissal from Independence Academy.*

23.     C.W.'s CCC met as planned on May 1, 2018. The CCC agreed that C.W. required a different private placement, but it would take some time to find a placement that was appropriate and had availability to accept C.W. The CCC discussed day treatment facilities and residential facilities. While the parties worked to find an appropriate private placement, the CCC determined that C.W. would receive six hours of homebound services weekly, which consists of one-on-one academic instruction from the School's teachers licensed in core content areas, all with assistance from a one-on-one aide, and 24/7 access to an online portal of curriculum. In addition, the CCC determined that C.W. would receive twenty hours of extended school year services during the summer. C.W.'s mother signed the May 1, 2018, IEP.

24.     Following the May 1, 2018, case conference meeting, C.W. signed five consent forms authorizing the School to investigate several day and residential private educational placements to see if the placements had availability and if C.W. might be an appropriate fit. After receiving rejections from several such placements, the School notified C.W.'s mother that there were openings for a facility known as T.C. Harris in Lafayette, Indiana, which housed both a day and residential treatment facility.

25. At a CCC meeting on May 25, 2018, C.W.'s mother and a representative from the School agreed to visit T.C. Harris to see if it might be a good fit for C.W. The CCC determined that C.W. would continue to receive twenty hours of extended school year services during the summer, and six hours of weekly homebound services weekly continue to be available after the summer if a private placement had not been secured by that point.

26. During summer 2018, C.W. attended homebound services and worked towards high school credits. C.W.'s mother stopped sending C.W. to homebound services in August 2018, although the services are still available to him via an online curriculum portal and weekly instruction with licensed teachers. If he had not stopped attending services, C.W. would have twenty high school credits and been on track to graduate.

27. In June 2018, unbeknownst to the School, C.W.'s mother approached Autism Parent Care in Carmel, Indiana, which provides ABA therapy. Autism Parent Care evaluated C.W. and began providing ABA therapy in their private facility. When C.W. was asked to work on academic tasks, C.W. demonstrated physical aggression, tried to cut his wrists, and ran out of the building into traffic. Approximately one week later, C.W.'s mother went elsewhere for a potential placement, presumably due to the Autism Parent Care director's recommendation that residential placement was appropriate.

28. Unbeknownst to the School, C.W.'s mother then approached Changing Lives, which provides ABA therapy but no educational services. Changing Lives evaluated C.W. and began providing ABA therapy around September 18, 2018, at C.W.'s home or preferred community activity setting, such as fishing or playing basketball. C.W. has not attended Changing Lives' facility in Anderson, Indiana, and has worked on academic tasks for only a few minutes.

29. The IHO's decision is an abuse of discretion in the following ways:

   a. The IHO committed error when she concluded that C.W.'s May 1 and May 25, 2018, IEPs were not reasonably calculated to provide meaningful educational benefit.

   b. The IHO committed error when she concluded that C.W.'s IEPs since April 2018 did not provide an appropriate education in the least restrictive environment.

   c. The IHO committed error when she concluded that the School failed to consider placement options.

   d. The IHO committed error when she concluded that the School failed to provide C.W. with an appropriate transition evaluation and transition IEP.

   e. The IHO committed error when she concluded that that any residential placement would be contrary to transition planning.

   f. The IHO committed error when she concluded that the School failed to provide C.W. with a free and appropriate public education during alleged removals that occurred since January 1, 2018.

30. The School appeals the IHO's decision to the Court, requesting a review of the evidence and record presented during the administrative proceedings below.

WHEREFORE, Plaintiff respectfully requests that the Court find by a preponderance of the evidence that the administrative record, including testimony and exhibits, as well as any additional evidence received, does not support the findings of fact, conclusions of law, and orders by the IHO and, consistent with the Court's finding, grant all other relief proper in the premises.

Respectfully submitted,

CHURCH CHURCH HITTLE + ANTRIM

/s/ *Brent R. Borg*_____
Brent R. Borg, Attorney No. 27415-29
bborg@cchalaw.com
Andrew A. Manna, Indiana Attorney No: 24290.49
amanna@cchalaw.com
Jessica M. Heiser, Indiana Attorney No: 31339-29
jhesier@cchalaw.com


2 N. 9th Street
Noblesville, IN 46060
Telephone: (317) 773-2190
Facsimile: (317) 773-5390

Attorneys for Defendants
Carmel Clay School Corporation
and The Carmel Clay Board of School Trustees

# CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of January, 2019, a true and exact copy of the foregoing was filed electronically via the Court's Electronic filing system. Notice of this filing was sent to the following by operation of the Court's Electronic filing system:

Catherine M. Michael
Thomas W. Blessing
11555 N Meridian, Suite 530
Carmel IN 46032
cmichael@hzlegal.com
skerr@hzlegal.com

11650 Lantern Road, Suite 204
Fishers, IN 46038
tom@mjcattorneys.com

                                             */s/ Brent R. Borg*_____
                                             Brent R. Borg, Indiana Attorney No: 27415-29